UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80190-CIV-ROSENBAUM/HUNT

YVES SIMON and
CARLINE AMAZAM,

       Plaintiffs,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

       Defendant.
_____/

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss [D.E. 10]. The Court has carefully considered Defendant's Motion, all supporting and opposing filings, and the record. Because the Complaint contains no cognizable basis for relief, the Court now grants Defendant's Motion but allows Plaintiffs an opportunity to file an amended complaint by August 8, 2013.

**I. Background**

*A. The Allegations Concerning the Pending Lawsuit*

Plaintiffs Yves Simon and Carline Amazam allege that they are the current title owners of a particular property in Boynton Beach, Florida. *See* D.E. 1-2 at 3-4, ¶ 2.[1] According to the

---

[1] Some documents in the record contain more than one page-numbering system: the original and the one imprinted across the top of the page by the Court's CM/ECF system. This Order refers to the page number left by the Court's CM/ECF system.

Complaint, Marie Lourdes Jean-Baptiste[2] granted Plaintiffs a quit-claim deed in the property, which was recorded on November 23, 2009, with Palm Beach County. *Id.* at 4, ¶ 3.a.

About two-and-a-half years before Jean-Baptiste allegedly conveyed her interest in the property to Plaintiffs, on April 26, 2007, she entered into a mortgage and note relating to the property ("Mortgage" and "Note"). *Id.* at 4, ¶ 3.b.; *see also id*. at 28.[3] The Mortgage defines terms used within it and the Note, including, among others, the following:

> (C)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. . . .
>
> (D)   "Lender" is INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK . . . .
>
> (E)   "Note" means the promissory note signed by [Jean-Baptiste] and dated April 26, 2007. The Note states that Borrower owes Lender . . . $156,000.00 . . . plus interest. [Jean-Baptiste] has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2037.
>
> \* \* \* \* \*
>
> (G)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

[2]Jean-Baptiste's name is spelled differently throughout the filings in this case. The Court takes this spelling from the mortgage and note that Jean-Baptiste signed.

[3]The Complaint identifies the mortgage as "Attachment A" to the Complaint. *See* D.E. 1 at 4, ¶ 3.b. Attachment A, however, appears to be the second mortgage, which is described later in the Complaint as "Attachment B." The document actually attached as "Attachment B" to the Complaint appears to be the mortgage referenced in the Complaint as "Attachment A." Accordingly, this Order refers to Attachment B as the primary mortgage and Attachment A as the secondary one.

    D.E. 1-2 at 28-29.  In addition, the Mortgage provides,

> Borrower understands and agrees that MERS holds only legal title to the interests granted by [Jean-Baptiste] in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

*Id.* at 30.

    The Note, in turn, is signed by Jean-Baptiste and states, "In return for a loan that I have received, I promise to pay U.S. $ 156,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK. . . ."  D.E. 10-2 at 4, ¶ 1.  Despite this language in the Note, the Complaint baldly claims that "[n]either Indymac Bank FSB nor MERS provided any consideration (financing) to the borrower which rendered the mortgage null and void for lack of consideration." D.E. 1-2 at 4, ¶ 4.

    In addition to the Mortgage, also on April 26, 2007, the Complaint avers, Jean-Baptiste entered into a second mortgage and note ("Second Mortgage" and "Second Note").  D.E. 1-2 at 4, ¶ 3.c.  The Second Mortgage and Second Note, which contained the same definitions and statement concerning MERS's role in the transaction as the Mortgage and Note, was for $29,250.00.  *See* D.E. 1-2 at 48.  As with the Mortgage and Note, the Complaint contends with regard to the Second Mortgage and Second Note that "[n]either Indymac Bank FSB nor MERS provided any consideration (financing) to the borrower which rendered the mortgage null and void for lack of consideration." D.E. 1-2 at 4, ¶ 4.

    The Complaint further urges that MERS's "nominee status . . . [is] le[g]ally insufficient to

empower MERS to effectuate a valid mortgage" and that MERS cannot "be both the mortgagee and the nominee of the mortgage . . . ." D.E. 1-2 at 4, ¶ 5. Based on the alleged lack of consideration and MERS's characterization in the Mortgages and Notes as a nominee for Indymac, the Complaint seeks for the Court "to enter judgment against Defendant removing the clouds from the title to the subject property and quieting title, by removing the lien created by the Mortgage . . . ." *Id.* at 4-5.

<u>B. The Procedural History</u>

Plaintiffs originally filed the pending Complaint in Palm Beach County Circuit Court. *See* D.E. 1 at ¶ 1; D.E. 1-2 at 3. Three days later, on December 7, 2012, Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR13, Mortgage Pass-Through Certificates, Series 2007-AR13 under the Pooling and Servicing Agreement Dated May 1, 2007, commenced a foreclosure action concerning the Mortgage in *Deutsche Bank, as Trustee v. Marie Lourdes Jean-Baptiste*, Case No. 50212CA022902XXXXMB. *See* D.E. 10-1. That matter remains currently pending in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. *See id*. According to the complaint in that case, the Mortgage and Note were "negotiated and/or transferred" to Deutsche Bank. D.E. 10-1 at 8, ¶ 2. The complaint in *Deutsche Bank* further asserts that no payment on the Mortgage and Note has been made since April 1, 2012. *See id.* at 9, ¶ 5.

On January 22, 2013, MERS was served with the Complaint in the instant matter. *See* D.E. 1 at ¶ 1. On February 21, 2013, MERS removed this case to this Court on the basis of diversity jurisdiction. *See, generally*, D.E. 1. Subsequently, MERS filed the pending Motion to Dismiss [D.E. 10].

<u>C. MERS</u>

Counties maintain property records reflecting ownership of land in their jurisdictions.

Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 114 (2011) (citation omitted).  Most states have historically tracked changes in property ownership, with a corresponding charge for recording such changes.  *Id.* at 114-15.  Traditionally, mortgage documents associated with these transactions were moved almost entirely by hand and by mail.  Ariana Eunjung Cha & Steven Mutson, *How the Mortgage Clearinghouse MERS Became a Villain in the Foreclosure Mess*, The Washington Post, Dec. 30, 2010, www.washingtonpost.com/wp-dyn/content/article/2010/12/30/AR2010123003056.html.

This traditional handling of such transactions made it logistically challenging to transfer large volumes of mortgages from one holder to another, such as occurs in the mortgage-backed securities industry, which developed in the latter part of the twentieth century.  *See id*.  In addition, proceeding with large numbers of such transactions in the traditional way imposed additional costs arising from the fees charged by the various jurisdictions processing the transactions.

In the mid-1990s, MERS was created, addressing both of these concerns.  *See id.*; *see also Two Faces*, 53 Wm. & Mary L. Rev. at 116.  On its website, MERS describes itself as "serv[ing] as the mortgagee in the land records for loans registered on the MERS® System, and [as] a nominee (or agent) for the owner of the promissory note." http://www.mersinc.org/about-us/our-business (last visited July 25, 2013).  MERS further explains, "The MERS® System is a national electronic database that tracks changes in mortgage servicing and beneficial ownership interests in residential mortgage loans." *Id.*  Under the MERS system, MERS serves as the nominee for numerous owners of the promissory note and is supposed to keep track of which actual owner owns the promissory note at any given time.  But the name on the records maintained with the counties never changes

from MERS. As a result, the tangible paperwork never is changed, so effort and fees are saved.

## II. Discussion

*A. Standard of Review on a Motion to Dismiss*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must limit its consideration to the pleadings and exhibits attached to the pleadings and, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting

*Twombly*, 550 U.S. at 570) (quotation marks omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*B.  The Complaint Fails to State a Claim Under Florida Law*

Federal jurisdiction in this case is based on diversity. *See* D.E. 1. As a result, the Court applies federal law to procedural issues and state law to substantive matters. *McMahan v. Toto*, 256 F.3d 1120, 1131-32 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In applying Florida law, first, the Court considers rulings of Florida's Supreme Court. *See Bailey v. Southern Pacific Transp. Co.*, 613 F.2d 1385, 1388 (5th Cir.), *cert. denied*, 449 U.S. 836 (1980). Where the highest court in the state has rendered no decisions on point, however, this Court must follow the opinions of Florida's intermediate courts, unless it is "convinced that the highest court would decide otherwise." *Id.* (citing *Commissioner v. Bosch*, 387 U.S. 456, 465 (1967)).

As discussed previously, the one-count Complaint in this case seeks to remove the lien created by the Mortgage and the Second Mortgage on the property at issue. In support of this requested relief, the Complaint asserts that the Mortgage and Second Mortgage are not valid because (1) neither MERS nor Indymac "provided any consideration (financing) to [Jean-Baptiste]" in connection with the Mortgage and Second Mortgage, and (2) "MERS['s] nominee status in the . . . mortgage . . . [is] le[g]ally insufficient to empower MERS to effectuate a valid mortgage. MERS['s] averments that it can be both the mortgagee and the nominee of the mortgage is legally

inconsistent as one cannot be both the principal and the substitute for itself." D.E. 1-2 at 4, ¶¶ 4, 5.

With regard to the first basis — that neither MERS nor Indymac provided financing to Jean Baptiste in connection with the Mortgage and Second Mortgage, this assertion is directly at odds with the content of the documents central to the Mortgage and Second Mortgage transactions. In fact, as the Note that Jean-Baptiste entered into in connection with the Mortgage specifies, "***In return for a loan that I have received***, I promise to pay U.S. $ 156,000.00 . . . , plus interest, to the order of the Lender. The Lender is INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK." D.E. 10-2 at 1 (emphasis added).[4] "Loan," in turn refers to "the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under [the Mortgage], plus interest." D.E. 1-2 at 29. In other words, Indymac loaned Jean-Baptiste $156,000.00 in consideration for Jean-Baptiste's promise to pay the money back with interest and other sums.

Where, as here, exhibits that may be considered on a motion to dismiss directly contradict a complaint's general or conclusory allegations, the exhibits control. *See Griffin Inds., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (citation omitted). As a result, the Court disregards the Complaint's assertions that "[n]either Indymac Bank, FSB nor MERS provided any consideration (financing) to [Jean-Baptiste] which rendered the mortgage null and void for lack of consideration,"

---

[4] Although the Note is not attached to the Complaint, the Court may nonetheless consider it in the course of evaluating the pending Motion to Dismiss. "[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citation omitted). Here, both factors are satisfied. The Note is an integral part of the Mortgage transaction at issue in this case, and, though MERS relied upon and attached the Note as an exhibit to its Motion to Dismiss, Plaintiffs did not object to the authenticity of the Note.

*see* D.E. 1-2 at 4, ¶ 4, since the Note reflects that Indymac actually did provide financing to Jean-Baptiste.

As for any consideration that MERS might have given, that issue merges with Plaintiffs' second basis for contending that the Mortgage and Second Mortgage are invalid: that MERS's "nominee status" under the Mortgage renders the Mortgage null and void and that MERS cannot serve as both the mortgagee and the nominee of the Mortgage. *See* D.E. 1-2 at 4, ¶ 5. It is true that the propriety of MERS's role in mortgage transactions has been questioned and criticized by some courts in other parts of the country. *See, e.g., Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 165-66 (Kan. 2009) (describing the parties as "appear[ing] to have defined [the word 'nominee'] in much the same way that the blind men of Indian legend described an elephant — their description depended on which part they were touching at any given time"); *Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark., Inc.*, 301 S.W.3d 1 (Ark. 2009); *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623-24 (Mo. App. 2009).

But Florida law controls here. And, in Florida, courts have held that the language contained in the Mortgage whereby the borrower acknowledges and agrees that MERS may serve as nominee for the lender and its successors and assigns and that MERS enjoys the right to exercise all of the lender's interests, *see* D.E. 1-2 at 30, bestows upon MERS the status of a "nonholder in possession . . . who has the rights of a holder," under Section 673.3011, Fla. Stat. *Taylor v. Deutsche Bank Nat'l Trust Co.*, 44 So. 3d 618, 622 (Fla. 5th DCA 2010). Section 673.3011(2), in turn, renders "[a] nonholder in possession of the instrument who has the rights of a holder" a "'person entitled to enforce' an instrument." Thus, as a nominee for the lender under the terms of the Mortgage, MERS has a statutory right to enforce the terms of the Mortgage, without regard to whether MERS itself

provided any consideration for the Mortgage. *See also Mortg. Elec. Registration Sys., Inc. v. Azize*, 965 So. 2d 151 (Fla. 2d DCA 2007) (MERS had standing to enforce the note and foreclose the mortgage because it served as the owner and holder of the note as nominee for the lender, and it could enforce the note on the lender's behalf); *Mortg. Elec. Registration Sys., Inc. v. Revoredo*, 955 So. 2d 33 (Fla. 3d DCA 2007) (same); *see also Trent v. Mortg. Elec. Registration Sys., Inc.*, 288 F. App'x 571, 571 (11th Cir. 2008) (MERS did not violate the Florida Consumer Collection Practices Act by sending allegedly deceptive notices to the debtors because it has the authority to file foreclosure actions) (citing *Revoredo*, 955 So. 2d 33, and *Azize*, 965 So. 2d 151).

Nor does the fact that the Mortgage also describes MERS as the "mortgagee" somehow invalidate the mortgage. *Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1277 (M.D. Fla. 2012) ("When addressing the question of whether MERS is the mortgagee, the Florida courts have consistently affirmed the use of MERS as the designated mortgagee of record and the principle that MERS may serve as the mortgagee or as nominee for the lender and the lender's successors and assigns").  As Florida's Third District Court of Appeal stated in the context of explaining why MERS had standing to enforce a note and foreclose the corresponding mortgage, "[I]t is clear that, in accordance with the usual practice, MERS was only the holder (by delivery) of the note. . . . Although it was called the 'mortgagee' in the instrument and acted on behalf of the most recent purchaser-assignee-lender, . . . MERS was not — again, as usual — its 'owner.'  We simply don't think that this makes any difference." *Revoredo*, 955 So. 2d at 34 n.2 (citations and emphasis omitted).  Indeed, the Third District Court of Appeal further remarked, "Because . . . it is apparent — and we so hold — that no substantive rights, obligations or defenses are affected by the use of the MERS device, there is no reason why mere form ['stem[ming] essentially from the

medieval English land law'] should overcome the salutary substance of permitting the use of this commercially effective means of business." *Id.* at 34 (citations omitted).  The courts of Florida having spoken uniformly and definitively on this issue, this Court finds that, under Florida law, the mere fact that the Mortgage refers to MERS as both the mortgagee and as the nominee for the lender does not invalidate the Mortgage.

### *III.  Conclusion*

Because the Complaint as currently written contains no cognizable basis for relief, the Court **GRANTS** Defendant's Motion to Dismiss [D.E. 10].  Plaintiffs request an opportunity to amend their Complaint.  *See* D.E. 15 at 4-5.  Although it is not clear to this Court at this time how amending the Complaint could correct the deficiencies identified above, since Plaintiffs have not yet had a chance to amend their Complaint, the Court shall provide Plaintiffs with such an opportunity. Plaintiffs shall file any amended complaint by **August 8, 2013**.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 25th day of July 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:

The Honorable Patrick Hunt
Counsel of Record